## Shadrach Speight *et al. v.* L. C. Adams.

A bill of review can only be filed upon error in the decree or newly discovered evidence after the rendition of the decree.

Where a plaintiff neglected to enforce his judgment for a period of four years, it was held to be fraudulent as against *bona fide* purchasers of the judgment debtor.

The original bill filed 20th August, 1838, states, that in January, 1837, one Crockett, with a fraudulent design, sold Ewing a. tract of land, and gave him a deed in fee simple with a general warranty. Ewing executed his two promissory notes, with the complainant as surety for the purchase money. One of the notes for $1040 fell due 12th January, 1838, and at the April term, 1838, of Leake circuit court, L. C. Adams, assignee, &c. recovered judgment on that note for $1063 30; upon which judgment execution issued, &c. Crockett is wholly insolvent, and conveyed to Ewing no title to the property nor any interest therein, or if any interest, it is such as will be destroyed by causes existing at the time of sale. The title to the land is in Pearl, who never sold to Crockett, and to whom Crockett never paid any thing, and Crockett's pretended claim is invalid. There were also at the time of the sale to Ewing judgments in Leake circuit court against Crockett, which were a lien on the land, which judgments have not been paid, and executions upon which have been levied upon the land, and under which the land was advertised for sale.

The answer of Adams, filed 29th January, 1839, admits the sale of land by Crockett to Ewing, the execution of the note, the rendition of the judgment, and the deed to Ewing, as charged in the bill; but requires proof that the note sued on was for the land named in the deed and bill. It denies all fraud; states that the note sued on was for land sold by Crockett to Ewing; that Crockett had a good title to it. That the land was entered by Sylvester

Pearl; that Pearl transferred the receiver's certificate to McDaniel; that McDaniel transferred to Crockett, who sold to Ewing. Denies knowledge of any judgments against Crockett which would destroy the validity of the sale to Ewing, and alleges ignorance of Crockett's pecuniary affairs.

Upon this state of the case the chancellor dismissed the bill on final hearing. A bill of review was filed in January, 1841, which after stating the filing of the original bills and answers, states that in the spring of 1839 he applied to the clerk of Leake circuit court for a copy of the record in the suit of Hill *v.* Crockett; that the clerk made out what he alleged to be a copy of the record; that complainant handed it to his solicitor, who informed him that it was too defective to be used; that he applied to the clerk for a complete transcript, which he believes he obtained; that his counsel again informed him that the record was defective; that complainant, who can neither read-or write, again called for a better record, and was informed that most of the papers were lost. That under the judgment aforesaid the land was sold as the property of Crockett. That he had repeatedly applied for a copy of this record, but could not get it in time for the final hearing of this cause; and that he used every exertion to get it; that he now has it, and that it shows an entire failure of consideration of the notes sued on. The bill of review is taken for confessed.

Wm. Yerger for complainant.

The bill of review being taken *pro confesso*, no question can arise as to the propriety of filing it. If it could, however, the matters in the bill are sufficient.' It appears that the party made several efforts to get the record, which was defectively made out, and that finally the clerk informed him the papers were lost, and he could not make it out; he was therefore unable to have it on the former trial, since which time the papers have been found and the record made out. Story's Eq. Plead. 326.

As to the sufficiency of the proof to injoin the judgment perpetually, there is no question. The land has been sold by virtue of a judgment against Crockett, rendered before the sale to Ewing, and the law is settled, that where a note is given for land conveyed by deed with warranty, it is a good defence to it, if the land

Shadrach Speight *ct al. v.* L. C. Adams.

have been sold under a judgment against the grantor, rendered before the conveyance; because, by such sale there has been a total failure of consideration, although the defendant was not evicted, for he is liable to be evicted, and is liable for mesne profits. 11 John. R. 50.

HUGHES for defendant Adams.

To the bill of review there is no answer, because there is nothing in it to be answered, and the same is taken for confessed. It is the well settled practice that a bill of review can only be filed on one of two grounds: first, upon error in the decree; or, secondly, upon newly discovered matter after the rendition of the decree. See Maddock's Chancery, 535 to 540.

This bill is filed upon newly discovered matter, which is—since the rendition of the decree the complainants have ascertained a transcript from the circuit court of Leake can now be obtained, which could not be done before the decree.

What is the object of this transcript? It is to prove that a sale under execution took place of the property which is the consideration of the judgment enjoined. Was it necessary to prove this by the transcript? The complainants have shown that there was a judgment and an execution in existence showing the levy at the time of the decree, but a complete transcript of the record and proceedings could not be had. But could not the complainant have shown the judgment and execution thereon, on which a levy was made, and prove the loss of the other papers; or without proof of the loss, prove by the sheriff a sale under execution on the judgment, and produce the sheriff's deed, or copy of it, from the records in Leake. This could have all been done at the first hearing, as the land was not sold, and of course the complainants would have nothing to complain of. If the sheriff made no deed, the execution could be no evidence of a sale, and if the deed was made and not put upon record within three months from the making the same, it would be void as to creditors and purchasers. We must presume, however, that no deed was made, because none is averred. And the transcript now produced, and which is made the foundation of a review, shows a sale under execution, it is true, but subject to two observations.

1. The return on the execution does not state who was the purchaser.

2. The said transcript, taken in connection with the dates men-. tioned in the original bill, shews that no sale under execution could be made at the time that a sale is said to have been made, which would divest the title of Ewing to the land sold, because the sale and deed were made to him in January, 1837; at that time the lien of the judgment was subsisting, and Ewing pur- chased subject to that lien, and he had a title against the whole world except the judgment creditor. The judgment creditor chose not to enforce his lien within a year and a day, and his right to execution was at an end, and the lien was dormant and could not be enforced, and the purchase by Ewing was good. See Michie *v.* Planters' Bank, 4 Howard, 140.

*Scire facias* afterwards issued, and at the April Term, 1838, by the judgment of the court, the plaintiff had execution. This, however, gave no right to have execution of property aliened before award of execution.

But it no where appears in the original bill, in the bill of review, in the answer or in the proof, that complainants are in a situation to claim the benefit of the relief asked by them. They are sure- ties for Ewing, against whom, with them, there is a judgment; and, for any thing we know, Ewing is satisfied with the title of Crock- ett, and if he is, the complainants have no right to be raising a dust about it. They do not come into this court to ask the court to give them the benefit of the equitable lien which Crockett has for the payment of the purchase money. And they do not allege that the money can not be made from the property of Ewing, or that he is insolvent, or will not pay the money. The case is pre- sented in none of these aspects, and upon what ground the relief is prayed which is asked for, counsel do not know.

But suppose the complainants are the persons who have a right to come into this court and ask the relief they pray, are they enti- tled to any? It is submitted that they are not. There was no failure of consideration, if a failure at all, until after the filing of the bill. The land had not been sold until after the bill had been filed. This appears from the bill; and the exhibit filed with the bill of review. The complainants, therefore, had no failure of

consideration to complain of, which could not occur until by law the legal right to the note sued on had been vested in the defendant Adams. After the title at law in him had been complete, by reason of the insolvency of Crockett, a recovery on his covenant could not be made effectual which would vest in Ewing an equity against Crockett but not against defendant Adams. Adams has the legal title, and no equity existing at the time he acquired that legal title attaches to divest it. And if the court were to review and revise the decree formerly pronounced, the same decree would again be rendered.

The CHANCELLOR.

The bill of review must be dismissed—

1. Because the matter of the bill is not newly discovered matter, but matter of which the complainant shows he was fully advised pending the original bill, but which he says he could not procure. He should have applied for a continuance or a re-hearing. 2 Yerger, 140; 6 John. Ch. Rep. 255.

2. The matter alleged is not sufficent to sustain the bill, when taken in connection with other matters shown in the case, to wit: that Ewing must have sold the land—he could not, therefore, resist the payment of the purchase money, or call for a rescission, because the parties could not be placed in *statu quo;* and this objection must prevail equally against the surety. Collier *v.* Thompson, 4 Monroe, 85.

3. I am strongly inclined to the opinion that the delay of the plaintiff in enforcing his judgment for nearly four years, is to be regarded as fraudulent as to *bona fide* purchasers from the judgment debtor. Here the judgment was obtained in 1836. No execution issued for more than a year, and a *sci. fa.* to revive was not sued out until March, 1838, when the judgment was revived, but no *fi. fa.* was taken on this revivor of the judgment until November, 1839, and the execution was levied in January, 1840.

Let the bill of review be dismissed.